**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT COHEN,<br><br>Plaintiff,<br><br>v.<br><br>MONMOUTH REAL ESTATE INVESTMENT CORPORATION, MICHAEL P. LANDY, EUGENE W. LANDY, KEVIN S. MILLER, BRIAN H. HAIMM, KIERNAN CONWAY, NEAL HERSTIK, MATTHEW I. HIRSCH, CATHERINE B. ELFLEIN, SAMUEL A. LANDY, DANIEL D. CRONHEIM, GREGORY T. OTTO, SONAL PANDE, and SCOTT L. ROBINSON,<br><br>Defendants, | Civil Action No. ___________<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Robert Cohen ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Monmouth Real Estate Investment Corporation ("Monmouth" or the "Company") and Monmouth's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of the Board's attempt to sell the Company to Industrial Logistics Properties Trust through its wholly-owned subsidiary Maple Delaware Merger Sub LLC (collectively "ILPT").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading definitive proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on December 21, 2021. The Proxy

recommends that Monmouth stockholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Monmouth is acquired by ILPT. The Proposed Transaction was first disclosed on November 5, 2021, when Monmouth announced that it had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which ILPT will acquire all of the outstanding shares of common stock of Monmouth for $21 per share (the "Merger Consideration"). The deal is valued at approximately $4 billion and is expected to close in the first half of 2022.

3. The Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the financial projections prepared by Monmouth management, as well as the financial analyses conducted by CSCA Capital Advisors, LLC ("CSCA") and J.P. Morgan Securities LLC ("J.P. Morgan"), Monmouth's financial advisors.

4. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing an amendment to the definitive proxy statement with the SEC or otherwise causing an amendment to the definitive proxy to be disseminated to Monmouth's stockholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Monmouth's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

5. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Monmouth.

6. Defendant Monmouth is a corporation organized and existing under the laws of the State of Maryland. It is a public equity real estate investment trust ("REIT"). The Company's principal executive offices are located at Bell Works, 101 Crawfords Corner Road Suite 1405, Holmdel, NJ 07733. Monmouth common stock trades on the New York Stock Exchange under the ticker symbol "MNR."

7. Defendant Michael P. Landy has been President and Chief Executive Officer ('CEO") of the Company since 2013, and a director since 2007. Defendant Michael Landy previously served as the Company's Chief Operating Officer ("COO") from 2011 to 2013, as Executive Vice President ("EVP") from 2009 to 2010, EVP - Investments from 2006 to 2009, and as Vice President - Investments from 2001 to 2006. Defendant Michael Landy is the son of Defendant Eugene Landy and the brother of Defendant Samuel Landy.

8. Defendant Eugene W. Landy is the founder of the Company and has been Chairman of the Board and a director of the Company since 1968. Defendant Eugene Landy previously served as the Company's President and CEO from 1968 to 2013. Defendant Eugene Landy is the father of Defendants Michael Landy and Samuel Landy.

9. Defendant Kevin S. Miller has been Chief Financial Officer ("CFO") and Chief Accounting Officer of the Company since 2012, and a director since 2017.

10. Defendant Brian H. Haimm is Lead Independent Director and has been a director of the Company since 2013.

11. Defendant Kiernan Conway has been a director of the Company since 2018.

12. Defendant Neal Herstik has been a director of the Company since 2004.

13. Defendant Matthew I. Hirsch has been a director of the Company since 2000.

14. Defendant Catherine B. Elflein has been a director of the Company since 2007.

15. Defendant Samuel A. Landy has been a director of the Company since 1989. Defendant Samuel Landy is the son of Defendant Eugene Landy and the brother of Defendant Michael Landy.

16. Defendant Daniel D. Cronheim has been a director of the Company since 1989.

17. Defendant Gregory T. Otto has been a director of the Company since 2017.

18. Defendant Sonal Pande has been a director of the Company since July 14, 2020.

19. Defendant Scott L. Robinson has been a director of the Company since 2005.

20. Nonparty ILPT is a REIT, organized and existing under the laws of the State of Maryland. ILPT's principal executive offices are located at Two Newton Place, 255 Washington Street, Suite 300, Newton, Massachusetts 02458. ILPT common stock trades on the NASDAQ under the ticker symbol "ILPT."

21. Nonparty Maple Delaware Merger Sub LLC is a Delaware limited liability company and is a wholly owned subsidiary of ILPT.

**JURISDICTION AND VENUE**

22. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

23. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

24. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §

78aa, as well as under 28 U.S.C. § 1391, because: a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A. Background of the Company and the Proposed Transaction

25. Monmouth is one of the oldest publicly traded REITs in the world. Formed in 1968, Monmouth is one of the most specialized REITs. Its focus is on single-tenant, net-leased industrial properties on long-term leases, to investment grade tenants. The Company's tenant roster includes Amazon, Anheuser-Busch, Beam Suntory, Coca-Cola, FedEx, General Electric, Home Depot, International Paper, National Oilwell Varco, Sherwin-Williams, Siemens, Toyota, ULTA Cosmetics, and United Technologies.

26. On November 5, 2021, the Company entered into the Merger Agreement with ILPT.

27. According to the press release issued on November 5, 2021 announcing the Proposed Transaction:

> **Monmouth to be Acquired by ILPT for Approximately $4.0 Billion**
>
> ***Comprehensive Strategic Review Process Results in All-Cash, Value-Maximizing Transaction***
>
> ***Shareholders to Receive $21.00 Per Share in Cash***
>
> HOLMDEL, N.J., Nov. 05, 2021 (GLOBE NEWSWIRE) -- Monmouth Real Estate Investment Corporation (NYSE: MNR), or Monmouth, announced today that it has entered into a definitive merger agreement with Industrial Logistics Properties Trust (Nasdaq: ILPT) under which ILPT will acquire all of the outstanding shares of Monmouth for $21.00 per share in an all-cash transaction valued at approximately $4.0 billion including the assumption of debt and the committed acquisition and expansion pipeline (the "Transaction"). The Transaction has been unanimously approved by Monmouth's Board of Directors.
>
> The Transaction price of $21.00 per share represents a 24% premium to the unaffected closing share price of $16.99 on December 18, 2020 and a 36% premium to the 30-day volume weighted average unaffected trading share price of $15.43.

This Transaction with ILPT is the culmination of the comprehensive strategic review processes undertaken by Monmouth's Board of Directors, which were publicly announced and re-initiated in early September of this year following the prior comprehensive process initiated in January of this year. As part of these processes, Monmouth's Board and advisors invited over 90 potential counterparties to participate including strategic acquirers, private equity firms, pension and sovereign wealth funds, investment management firms and all parties that had publicly or confidentially expressed interest to the Company or its advisors in acquiring the Company. The transaction announced today represents the highest bid received by the Company and is an all-cash transaction.

Michael Landy, President and CEO, said, "The Monmouth Board and management team have stayed focused on maximizing value for our shareholders, and we are pleased to have reached this definitive agreement with ILPT to deliver immediate and certain all-cash value to our shareholders at a significant premium. The substantial interest in our company is a testament to our success building a best-in-class net-leased industrial real estate portfolio that is well positioned to benefit from the accelerated adoption of e-commerce. After over 50 years of success, we are thankful to all of our dedicated employees and partners for their hard work in building a great company and for helping us to deliver this terrific outcome for our shareholders. Much gratitude is warranted for the strong leadership and unwavering dedication provided by our Founder and Chairman, Eugene Landy throughout our 53-year journey."

Brian Haimm, Lead Independent Director of Monmouth's Board, said, "Today's announcement is the result of an exhaustive strategic review process in which the highest bid prevailed. The entire Board unanimously believes this transaction delivers compelling value to our shareholders and recognizes the value of Monmouth's high quality logistics portfolio."

**Transaction Details**

The Transaction is expected to close in the first half of 2022, subject to approval by Monmouth's shareholders and the satisfaction of other customary closing conditions. The Transaction is not contingent upon financing.

Under the terms of the agreement, Monmouth shareholders will be entitled to receive the previously announced dividend of $0.18 payable on December 15, 2021. If the Transaction is not consummated by March 31, 2022, Monmouth shareholders will also be entitled to receive a dividend for that completed quarter up to $0.18 if and as declared. In addition, Monmouth plans to continue to pay its regular quarterly 6.125% Series C Cumulative Redeemable Preferred Stock dividend through the closing of the Transaction.

Upon completion of the Transaction, Monmouth's common stock will no longer be

listed on the New York Stock Exchange.

**B. The Materially Incomplete and Misleading Proxy**

28. On December 21, 2021, Defendants filed the Proxy with the SEC. The purpose of the Proxy is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

***Materially Incomplete and Misleading Disclosures Concerning the Management-Prepared Financial Forecasts***

29. The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of J.P. Morgan's fairness opinion, J.P. Morgan reviewed "certain internal financial analyses and forecasts prepared by or at the direction of the management of Monmouth relating to its business." Additionally, the Proxy indicated that in connection with rendering CSCA's fairness opinion, CSCA reviewed the Company's "projected financial information relating to the business, earnings, cash flow, assets, liabilities and capitalization, including certain internal analyses and forecasts prepared by the management of Monmouth." Accordingly, the Proxy should have, but failed to, provide certain information in the projections that Monmouth's management provided to the Board and J.P. Morgan and CSCA.

30. Notably, Defendants failed to disclose line item entries which form the basis of Monmouth's financial forecasts for the following calculations: (a) Net Income; (b) Cash Net Operating Income (Cash NOI); (c) Adjusted EBITDA; (d) FFO per Share; (e) AFFO per Share;

and (f) Unlevered Free Cash Flow. This omitted information is necessary for Plaintiff to make an informed decision on whether to vote in favor of the Proposed Transaction.

***Materially Incomplete and Misleading Disclosures Concerning Financial Analyses***

31. With respect to the *Discounted Cash Flow Analysis* of J.P. Morgan, the Proxy fails to disclose: (i) the key data, inputs, and assumptions that form the basis of the range discount rates applied by J.P. Morgan in its calculations; and (ii) the "net debt and other adjustments for Monmouth as of September 30, 2021."

32. With respect to the *Public Trading Multiples Analysis and Selected Transaction Multiples Analysis* of J.P. Morgan, the Proxy fails to disclose the specific financial multiples and metrics for each of the companies and transactions studied by J.P. Morgan.

33. With respect to the *Discounted Cash Flow Analysis* of CSCA, the Proxy fails to disclose: (i) the Company's terminal values; and (ii) the key data, inputs, and assumptions that form the basis of the range discount rates applied by CSCA in its calculations.

34. With respect to the *Capitalization Rate Valuation Analysis* of CSCA, the Proxy fails to disclose Monmouth's pro forma cash NOI.

35. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable to make a fully informed decision in connection with the Proposed Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

36. In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the

materially incomplete and misleading information discussed above.

37. Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

38. Further, the Proxy indicates that J.P. Morgan and CSCA reviewed with the Board their financial analyses of the Merger Consideration and delivered to the Board oral opinions, which were confirmed by delivery of written opinions dated November 4, 2021, to the effect that the Merger Consideration was fair, from a financial point of view, to Monmouth stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning J.P. Morgan's and CSCA's financial analyses which have been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

39. Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. Defendants have filed the Proxy with the SEC with the intention of soliciting Monmouth stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material

information referenced above.

42. In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Monmouth, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

43. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

44. Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; and (ii) the value of Monmouth shares and the financial analyses performed by J.P. Morgan and CSCA in support of their fairness opinions.

45. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that J.P. Morgan and CSCA reviewed and discussed their financial analyses with the Board during various meetings including on November 4, 2021, and further states that the Board considered J.P. Morgan's and CSCA's financial analyses and fairness opinions in connection with approving the Proposed Transaction.

The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

46. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of Monmouth within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Monmouth and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause

the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

51. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to a definitive Proxy with the SEC or otherwise disseminating an amendment to a definitive Proxy to Monmouth stockholders unless and until Defendants agree to include the material information identified above in any such amendment;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C. In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

D. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: January 10, 2022

**ROWLEY LAW PLLC**

*S/ Shane T. Rowley*

Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com
*Attorneys for Plaintiff*